**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| DAVID P. McKINNEY, | : Case No. 3:18-cv-00213 |
| Plaintiff, | : |
| vs. | : District Judge Walter H. Rice |
| | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**REPORT AND RECOMMENDATIONS[1]**

**I.     Introduction**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a disability, among other eligibility requirements. A "disability" in this context refers to "any medically determinable physical or mental impairment" that precludes an applicant from engaging in "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Finding himself unable to work due to various health problems, Plaintiff David P. McKinney applied for Disability Insurance Benefits and Supplemental Security Income. He asserted that starting on November 30, 2014, and continuing thereafter, he had been under a disability. Administrative Law Judge (ALJ) Mark Hockensmith disagreed. He concluded

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

that Plaintiff was not under a disability and denied Plaintiff's applications. (Doc. #7, *PageID* #s 50-60).

Plaintiff brings the present case contending (in part) that ALJ Hockensmith erred when evaluating the medical source opinions and that substantial evidence fails to support ALJ Hockensmith's assessment of Plaintiff's mental residual functional capacity. Plaintiff seeks a remand of this case for payment of benefits or, alternatively, for further proceedings. The Commissioner finds no error in the ALJ's decision and asks the Court to affirm rather than remand.

## II. Background

Plaintiff was fifty years old on his asserted disability onset date. He therefore met the Social Security Administration's definition of an "individual approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d).[2] He has a limited education and worked in the past as a cemetery worker and a production assembler.

During a hearing before ALJ Hockensmith, Plaintiff testified that he has difficulty reading and took an oral test to get his driver's license. He could not read the written instructions he would get each day when working at the cemetery. He stopped working at this job because he had could not breath during the winter. He cannot breath in extreme cold or extreme heat.

Plaintiff described his health as "going downhill for a long time." (Doc. #7, *PageID* #78). When he walks a short distance or up a flight of stairs, he needs to sit down. He can

---

[2] Further citations to social security regulations will identify the pertinent Disability Insurance Benefits regulation with full knowledge of the corresponding Supplemental Security Income Regulation.

"mow the lawn some" using a push mower, but his lawn is not that big. *Id*. at 80. It takes him twice as long to mow the entire yard (thirty minutes) than it used to (fifteen minutes). He uses a prescription inhaler once in the morning and once at night to. And he keeps it with him all the time presumably for sudden breathing problems. *Id*. at 81. His attorney during the ALJ's hearing described this as a "rescue inhaler." *Id*. at 86. He uses this once or twice a week. *Id*.

Plaintiff testified that he has low-back pain, extending to his knee and right hip. *Id*. at 81, 85. He feels tingling in his left knee cap. *Id*. at 85. These problems limit his ability to walk. He can sit for forty-five minutes before needing to stand. *Id*. at 81. He can stand for about thirty minutes. *Id*. at 84. He consequently alternates between sitting and standing. He can lift ten pounds but cannot carry it far. *Id*. at 81

Activities around the house include doing the dishes and taking out the garbage. Yet this requires him to stand too long and "kind of gets [his] back." *Id*. at 82. He explained, "They don't make things high enough for a guy like me." *Id*. He is six feet three and a half inches tall. *Id*. at 74.

Plaintiff has difficulty getting along with others. He goes to the grocery store but does not have the patience for it. He revealed, "I'd much rather stay in the truck, and wait on my wife to get me stuff. I just ain't got patience for the store. I'm just not able…." *Id*. at 83. He described himself as just not a friendly type of person. *Id*. at 84. He provided a telling example: "You know, people can ask you one thing, and you can tell them, and they just look at you like you're stupid. Then you're arguing with them. That's why I'm an unfriendly person." *Id*. at 84.

Plaintiff also has memory and concentration problems. He "drifts off" when he watches TV shows or movies. *Id*. at 86-87. He typically cannot complete small chores or projects. He ends up walking away from them and starting over. Three or four times a week, Plaintiff has suicidal thoughts. He said, "I just don't want to be here." *Id*. at 87.

In June 2015, clinical psychologist George O. Schulz, Ph.D. evaluated Plaintiff at the request of the Ohio Division of Disability Determination. *Id*. at 360-69. Dr. Schulz found that Plaintiff's long-term memory was within the borderline to low-average range. His general fund of knowledge and his ability to abstract were in the low-average range. *Id*. at 367. Dr. Schulz did not administer an IQ test or any psychological testing. He diagnosed Plaintiff with borderline intellectual functioning, explaining that Plaintiff's "presentation during the interview supported intellectual functioning in the borderline range." *Id*. at 368. As to Plaintiff's ability to work with attention, concentration, and maintaining persistence and pace to perform simple and multi-step task, Dr. Schulz thought that "given [Plaintiff's] performance today on formal mental evaluation tasks he is likely to experience some objective concerns by employers." *Id*. Dr. Schulz further opined that Plaintiff would likely have some difficulties in responding to coworkers and supervisors, and he "is expected to respond appropriately to work pressure for tasks within the borderline range of intellectual functioning." *Id*. at 369.

In August 2015, psychologist Jennifer Swain, Psy.D., examined the administrative record and gave great weight to Dr. Schulz's opinions "as his opinions are consistent with the overall medical evidence." *Id*. at 101. In mid-October 2015, psychologist Juliette Savitscus, Ph.D., examined the administrative record. She recognized that consulting

examiner Dr. Schultz had diagnosed Plaintiff with borderline intellectual functioning [BIF]. And Dr. Savitscus noted, "Although formal testing was not conducted [by Dr. Schultz], language and interactions with the examiner suggest at least BIF. He was able to recall 4 dig[its] forward and 3 backward. Could count backwards by serial 4's. He could do simple arithmetic. He is able to cook, do laundry, [and] drive." *Id*. at 127. Dr. Savitscus gave great weight to Dr. Schulz's opinions, finding them consistent with the overall medical evidence. *Id*. at 128.

### III. Standard of Review and ALJ Hockensmith's Decision

Review of ALJ Hockensmith's decision considers whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Lawson v. Comm'r of Soc. Sec.*, 3:17cv119, 2018 WL 3301421, at *4 (S.D. Ohio 2018) (Ovington, M.J.), *Report & Recommendations adopted*, 2018 WL 3549787, at *1 (S.D. Ohio 2018) (Rice, D.J.).

ALJ Hockensmith reviewed the evidence and evaluated Plaintiff's disability status under a each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3] His more pertinent findings began at steps two and three where he found that Plaintiff had severe impairments—chronic obstructive pulmonary

---

[3] Further citations to social security regulations will identify the pertinent Disability Insurance Benefits regulation with full knowledge of the corresponding Supplemental Security Income regulation.

disease, degenerative disc disease, hypothyroidism, and borderline intellectual functioning—and that his impairments did not automatically qualify him for benefits. (Doc. #7, *PageID* #s 52-54).

At step four, the ALJ concluded that the most Plaintiff could do (his residual functional capacity, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)), consists of light work with many exceptions:

> (1) No climbing of ladders, ropes, or scaffolds; (2) can occasionally climb ramps and stairs; (3) can frequently crawl stoop and crawl; (4) must avoid concentrated exposure to temperature extremes, including humidity and wetness; (5) must avoid concentrated exposure to fumes, dusts, gases, odors, and poorly ventilated areas; (6) limited to simple, routine tasks; (7) limited to work in a static work environment with only few changes in routine; (8) no fast-paced work or strict production quotas; (9) occasional interaction with the public, coworkers, and supervisors: (10) no reading above the sixth-grade level.

*Id.* at 54.

The ALJ concluded at step five that there were plenty of full-time jobs Plaintiff could do (cleaner, packager, laundry laborer). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.

**IV.    Discussion**

Plaintiff points out that both Dr. Swain and Dr. Savitscus opined that Plaintiff was limited to simple, one- and two-step instructions in a predictable work environment without strict production quotas. Plaintiff contends that the ALJ relied on a "factual mistake" by excluding these functional limitations in his assessment of Plaintiff's residual functional capacity. (Doc. #8, *PageID* #s 488, 491).

The ALJ reviewed and reached the same conclusions about both Dr. Swain's and Dr. Savitscus's opinions. The ALJ placed "some weight" on Dr. Swain's and Dr. Savitscus's

opinions. *Some weight*, the ALJ noted, "is less than great weight, but more than little weight." (Doc. #7, *PageID* #57). The ALJ noted that each psychologist found Plaintiff had mild to moderate limitations, and each psychologist opined that Plaintiff could engage in superficial social interactions.

The ALJ rejected their opinions that Plaintiff could only engage in superficial interactions. He reasoned that the overall objective evidence did not support the limitation to superficial interactions. And he relied on "significant additional evidence … added to the record …" after these psychologists' reviews, and such evidence "indicates that the claimant is not limited to superficial interactions." *Id*. (citing Exhibit 3F). The ALJ's citation to Exhibit 3F reveals that he was relying on Dr. Schulz's report. *See id*.; *see also PageID* #s 360-69.

But—as Plaintiff correctly points out—the ALJ was factually incorrect in thinking that Dr. Schulz's report was added to the administrative record after Dr. Swain's and Dr. Savitscus's review. Dr. Schulz evaluated Plaintiff and issued his report on June 24, 2015. *Id*. at 360. It was in the administrative record that Drs. Swain and Savitscus reviewed in August and October 2015, respectively. *See id*. at 101, 105, 128, 132.

The Commissioner acknowledges that the ALJ committed this error but argues that it was harmless. (Doc. #11, *PageID* #507). The Commissioner's argument is well taken.

Portions of Dr. Schulz's examination—i.e., substantial evidence—undercut the idea that Plaintiff was only capable of superficial interactions with others. Dr. Schulz documented a number of Plaintiff's own statements that contradict the notion that he was limited to superficial interactions, including his statements that he had good relationships

7

with family members, socialized with friends once a week, got along with neighbors, store clerks, and public officials, and had no significant problems interacting with bosses or the public. *Id*. at 361, 363, 365. Dr. Schulz observed that Plaintiff's affect was appropriate and congruent, his motor activity was calm, his mood was euthymic, and "there was no psychological correlates related to affect and mood such as saddened facial musculature, psychomotor retardation, or motoric or autonomic signs of anxiety. *Id*. at 368. Dr. Schulz noted that Plaintiff did not report symptoms of anxiety or depression. These and many of Dr. Schulz's additional observations lean away from the conclusion that Plaintiff was restricted to superficial interactions with coworkers or supervisors. *See PageID* #s 366-67.

In addition, Plaintiff informed Dr. Schulz that he had never been previously treated through outpatient counseling for emotional, behavioral, or psychological problems. *Id*. at 365. Plaintiff reported that a doctor took him off work because of his COPD and hypothyroidism. *Id*. at 363. When Dr. Schulz asked Plaintiff, "how does your mental condition interfere with work or any attempts to work, [he] responded—'I don't think any mental problem would interfere with my work, just the physical problems I have'." *Id*.

Further, Dr. Schulz's conclusion that Plaintiff was "likely to have some difficulties in responding to coworkers and supervisors in a work setting" is vague and general enough to encompass work that requires more than superficial interactions with coworkers and supervisors. Dr. Schulz's opinion that Plaintiff was likely to have some difficulties in responding to coworkers and supervisors in a work setting does not necessarily mean that Plaintiff was limited only to superficial interactions, especially given the other findings in Dr. Schulz's report regarding Plaintiff's ability to interact and get along with others.

8

Plaintiff contends that the ALJ's assessment of his residual functional capacity failed to account for Drs. Swain and Savitscus's opinion that Plaintiff was moderately limited in maintaining attention and concentration for an extended time and moderately limited in completing a normal workday or workweek without interruption from psychologically based symptoms. Yet Dr. Swain and Dr. Savitscus believed Plaintiff was limited to simple, routine work tasks in a predictable environment without strict production quotas. *Id.* at 81, 104, 131, 144. Plaintiff overlooks that these limitations sufficiently account for his moderate limitations. Rather than diverging from these psychologists' opinions, the ALJ's assessment of Plaintiff's residual functional is in line with their belief that Plaintiff was moderately limited in his ability to maintain concentration, persistence, or pace. And, no other medical-source opinion of record proposes limitations that the ALJ needed to incorporate into Plaintiff's residual functional capacity. *See Ortman v. Comm'r of Soc. Sec.*, 2016 WL 2595111, at *2 (S.D. Ohio 2016) ("[S]ignificantly, the record contains no medical opinion of greater limitations than those that the administrative law judge included in her RFC determination.").

Accordingly, for the above reasons, Plaintiff's Statement of Errors lacks merit.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be affirmed; and
2. The case be terminated on the Court's docket.

September 5, 2019                                             *s/Sharon L. Ovington*
                                                                                      Sharon L. Ovington
                                                                                      United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).